UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNIBANK FOR SAVINGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:18-40134 |
| v. ) | |
| ) | |
| ) | |
| 999 PRIVATE JET, LLC, ELINA ) | |
| SARGSYAN and EDGAR SARGSYAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MOTION TO INTERVENE

SBK Holdings USA, Inc., ("SBK") respectfully moves pursuant to Federal Rules of Civil Procedure to intervene as a party to this action. Plaintiff, UniBank for Savings, has obtained an Order for injunctive relief allowing it to take possession, market, and sell the aircraft, a 1997 Gulfstream, while the legal ownership of the subject aircraft remains at issue and before a judicial body in the Los Angeles Superior Court a matter that not only predates the present action but also the underlying loan and promissory note secured between Unibank and the defendants, and now, in an adversary action pending in the U.S. Bankruptcy Court Central District of California. SBK risks severe damages if it is prevented from intervening as a party in this case and asserting its rights to the aircraft. For the reasons discussed herein and in the accompanying Memorandum of Law, SBK respectfully requests that the Court grant SBK's Motion to Intervene in this matter.

# MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF SBK'S MOTION TO INTERVENE

SBK respectfully submits this Memorandum of Points and Authorities in support of its Motion to Intervene in this action filed by plaintiff UniBank against the defendants, 999 Private Jet, LLC, Edgar Sargsyan, and Elina Sargsyan.  SBK moves pursuant to Federal Rules of Civil Procedure 24 to intervene to contest the rights and security interest asserted by plaintiff UniBank with respect to the subject property and to assert its claims and rights against UniBank and defendants Edgar Sargsyan, and Elina Sargsyan.  SBK intends to seek relief from the automatic stay in the bankruptcy case of 999 Private Jet, prior to asserting its claims against defendant 999 Private Jet in this proceeding.

## PROCEDURAL HISTORY

On September 7, 2018, this Court issued an Order for Injunctive Relief in favor of the Plaintiff in this action, Unibank for Savings ("UniBank"), authorizing UniBank to take possession of the subject Property, a Gulfstream aircraft, Model G IVSP, Serial No. 1315, FAA Registration No. N999SE, and all accessories, equipment, logbooks, manuals and maintenance records.  The September 7th, 2018 Order enjoins the defendants, 999 Private Jet, LLC, Elina Sargsyan, and Edgar Sargsyan, from disposing, selling, conveying, or encumbering the property.

The intervening party, SBK, is the Plaintiff in Los Angeles Superior Court Case Number BC649108 filed on February 3, 2017 naming 999 Private Jet LLC, Edgar Sargsyan, and Elina Sargsyan among other related defendants.  A motion for a restraining order and preliminary injunction was filed by SBK in the related matter Los Angeles

Superior Court case number BC677454, the subject of which is the property at issue

before this Court, Gulfstream aircraft, Model G IVSP, Serial No. 1315, FAA Registration

No. N999SE. The underlying claims in the two related Los Angeles Superior Court

matters involve *in part* a controversy over the legal ownership of the subject aircraft.

SBK has accused Mr. Sargsyan, a California attorney, of fraud, embezzlement, and

breach of fiduciary duties to SBK. With respect to the subject aircraft, Mr. Sargsyan

fraudulently acquired the aircraft with funds that were embezzled from SBK's client trust

account which was managed by Mr. Sargsyan and his former law practice, the Pillar Law

Group. Mr. Sargsyan is accused of forging ownership documents causing the fraudulent

registration of the subject aircraft to his corporation, Regdalin Aviation. In or about

September of 2016, SBK discovered Sargsyan's fraud and caused a lien to be recorded

against the Aircraft with the AAA. Consequently, Sargsyan transferred ownership of the

aircraft from Regdalin Aviation to 999 Private Jet, Inc., instead.

On August 24, 2018, SBK filed an ex parte application for a temporary restraining

order against Edgar Sargsyan, 999 Private Jet, LLC, Regdalin Aviation, and for an order

to show cause regarding the issuance of a preliminary injunction, with respect to the

Aircraft, seeking to prevent the defendants from, among other things, using or

transferring the Aircraft. On that same date, Los Angeles Superior Court Judge Dennis J.

Landin entered a Temporary Protective Order restraining and enjoining defendants from,

among other things, using or transferring the Aircraft.

Between August 25, 2018, and August 27, 2018, the defendants caused the Aircraft to be moved from Van Nuys Airport to Teterboro Airport in New Jersey, and then to San Francisco Airport in violation of the Superior Court Order.

On August 30, 2018 SBK filed a second ex parte application for a temporary protective order, and order to show cause regarding contempt for Sargsyan's, 999 Private Jet, and Regdalin Aviation's violation of the initial temporary order by moving the Aircraft. On that same date, the Los Angeles Superior Court entered a second Temporary Protective Order, preventing the use or transfer of the Aircraft, and setting a further hearing for September 7, 2018.

On September 6, 2018, Judge Dennis J. Landin, issued a tentative ruling for the September 7, 2018 hearing, granting SBK's Motion for a Preliminary Injunction. Judge Landin's tentative held that SBK made a sufficient showing of some possibility that it would prevail on the merits of their conversion claim and that it suffered irreparable harm at least with respect to Edgar Sargsyan collecting the income from chartering the subject aircraft.

On September 7, 2010 UniBank filed an Ex Parte Application for Leave to File Complaint in Intervention in the Los Angeles Superior Court action. UniBank failed to give notice to SBK notwithstanding UniBank's knowledge of the existence of SBK's Aircraft Claim Of Lien Letter and its valid claim regarding its right of ownership of the Aircraft. Consequently, SBK's Motion was deemed moot due to this Court's September 7, 2018 Order for Injunction.

Subsequently, on September 10, 2018, this Court entered in order granting Unibank's Motion for Preliminary Injunction.

On the same day and before Unibank could take possession of the aircraft, 999 Private Jet, LLC commenced a bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code identifying the subject Aircraft as property of the Estate.

SBK subsequently filed a Motion to Appoint a Trustee in the Bankruptcy proceedings on September 26, 2018 based on Edgar Sargsyan, the managing member of 999 Private Jet, LLC's pre-petition conduct including embezzling funds from SBK to purchase the subject aircraft. On October 3, 2018, UniBank filed a Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. Section 362 to allow UniBank to repossess, market and sell the Aircraft. On October 10, 2018, SBK filed an Adversary Complaint against UniBank, 999 Private Jet, LLC, Edgar Sargsyan, and others. The Complaint is for (1) determination of validity, priority, extent, and enforceability of Unibank Lien; (2) determination of validity and enforceability of lien of SBK; (3) fraud; (4) conspiracy to commit fraud; (5) conversion; (6) conspiracy to commit conversion; (7) breach of fiduciary duties; (8) aiding and abetting breach of fiduciary duties; (9) declaratory relief; (10) declaratory relief; (11) injunction; (12) constructive trust; and (14) equitable subordination. *See U.S. Bankruptcy Court Central District of California (Los Angeles), Adversary Proceeding No.: 2:18-ap-01313-SK, Bankruptcy Case No. 2:18-bk-20537-SK.*

At the conclusion of a hearing before United States District Court Judge Sandra Klein on October 24, 2018, Unibank's Motion for Relief from Automatic Stay was

granted. At the conclusion of the hearing, 999 Private Jet's voluntary petition for Chapter 11 Bankruptcy was converted to a Chapter 7 Bankruptcy on a motion made by the United States Trustee and a Chapter 7 Trustee was appointed.

### ARGUMENT

Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit intervention on timely application by anyone: (1) who "claims an interest relating to the property or transaction that is the subject of the action," and (2) whose interest may be "impair[ed] or impede[d]" by disposition of the action, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). This Rule is "broadly construed in favor of potential intervenors," who must be permitted to intervene if: "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately     represent the applicant's interest." *Ohio State Conference of NAACP v. Husted*, 588 F. App'x 488, 490 (6th Cir. 2014) (citation omitted); *see Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999) (same). SBK meets each of these requirements for intervention as of right.

Being that the Plaintiff in this action has obtained an Order for injunctive relief regarding the subject aircraft, while the legal ownership of the subject aircraft remains at issue and before a judicial body in the Los Angeles Superior Court in a matter that not only predates the present action but also the underlying loan and promissory note secured between Unibank and the defendants, SBK respectfully requests to be permitted to intervene as a non-party in this action pursuant to Federal Rule of Civil Procedure, Rule

6

24. SBK will suffer severe monetary damages should the ownership of the aircraft be transferred or sold to a third-party before the underlying legal claims pending in the Los Angeles Superior Court and in the U.S. Bankruptcy Court Central District of California are resolved.

The decision whether intervention of right is warranted involves a balance of potentially conflicting goals "to achieve judicial economies of scale by resolving related issues in a single lawsuit and to prevent a single lawsuit from becoming fruitlessly complex or unending." *Smuck v. Hobson* (D.C. Cir. Jan. 21, 1969), 408 F2d 175, 132 US App DC 372, 12 Fed R Serv 2d (Callaghan) 622. In each case, the decision of the Court as to whether a party can intervene is fact-driven analysis and "will depend upon contours of a particular controversy." *Id.* Moreover, the Court must accept all non-conclusory allegations in the motion as true when considering granting or denying a motion to intervene. *Bay Casino, LLC v. M/V Royal Empress* (E.D.N.Y. Nov. 26, 1999), 199 FRD 464, 2000 AMC 502.

Fed. R. Civ. P. 24 should be liberally construed in favor of potential intervenors. *Pension Benefit Guar. Corp. v. Slater Steels Corp.* (N.D. Ind. Feb. 24, 2004), 220 FRD 339, 32. In order to succeed on a motion to intervene as a matter of right, the intervenor must establish the following prongs: (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party." *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1,

7

7, 2009 U.S. App. LEXIS 21541, *7-9, 74 Fed. R. Serv. 3d (Callaghan) 1095; See *Negron-Almeda v. Santiago*, 528 F.3d 15, 22 (1st Cir. 2008); *see also B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-45 (1st Cir. 2006).

As to the first requirement under Rule 24(b)(2), this Court has held that the "timeliness inquiry is inherently fact-sensitive and depends on the totality of the circumstances." *Fed. Home Loan Mortg. Corp.*, 584 F.3d at 7; *See Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230, 1992 U.S. App. LEXIS 10312, 8, 23 Fed. R. Serv. 3d (Callaghan) 47. To assist in this analysis, the Court can inquire into the following factors: (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *Id.* Additionally, the above factors must be appraised by the Court in light of the posture of the case. *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 65 (1st Cir. 2008). SBK's motion is timely. UniBank's Complaint was filed on August 7, 2018. An Order for Injunctive Relief was issued on September 7, 2018, and an automatic stay was triggered shortly thereafter on or about September 10, 2018 as a result of 999 Private Jet's bankruptcy filing. Default judgments were entered against defendants Edgar Sargsyan and Elina Sargsyan on September 14, 2018. Unibank obtained relief from the automatic stay on October 24, 2018 which now allows UniBank to take possession of the aircraft. No factual or legal issues have been litigated nor will the parties be prejudiced by SBK's intervention.

8

The second requirement of this analysis necessitates that "the existence of an interest relating to the property or transaction that forms the basis of the pending action." *Fed. Home Loan Mortg. Corp.*, 584 F.3d at 7. This prong specifically requires the applicant has an "interest in the subject matter of litigation of such that he will gain or lose by direct legal operation of judgment" *Kelley v. Summers* (10th Cir. Kan. Feb. 23, 1954), 210 F2d 665.

Here, the intervening non-party learned that its interests in the subject property were at risk in this action on September 7, 2018 upon learning of the Order issued by this court when UniBank appeared as an intervening party in SBK's Los Angeles Superior Court lawsuit against the defendants during the September 7, 2018 scheduled hearing on SBK's Motion for Injunctive Relief regarding the subject aircraft. There is no prejudice to the existing parties by allowing the intervention. SBK will be prejudiced should intervention be denied and in turn UniBank markets and sells the plane to a third party. SBK alleges that the defendants in this case fraudulently acquired the aircraft and subsequently used the aircraft which was paid for entirely by SBK funds as collateral to secure the loan from the Plaintiff in this action, UniBank. SBK has an interest in the aircraft that is the subject of this pending action and will lose its interests - worth millions of dollars - in the property by direct legal operation of the judgment should ownership of the aircraft be sold or transferred to a third-party. Intervention under Rule 24(a)(2) requires "not only potential harm to proposed intervenor, but also that this harm be directly attributable to the Court's disposition of suit in which intervention is sought." *Weisman v. Darneille* (S.D.N.Y. 1980), 89 FRD 47, 32 Fed R Serv 2d (Callaghan) 1212.

9

Accordingly, SBK, a non-party to this action, requests to be permitted to intervene in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure.

Should the court permit intervention of the non-party, SBK further requests that a status conference is held before this Court at a date and time convenient with the Court and the parties.

> Respectfully Submitted,
> SBK HOLDINGS USA
>
> By its Attorneys,
>
>
> By: /s/ Sally P. McDonald
> Sally P. McDonald (BBO# 676459)
> Geragos & Geragos, P.C.
> 644 South Figueroa Street
> Los Angeles, CA 90017
> (401) 465-3557

DATED: October 31, 2018

## CERTIFICATE OF SERVICE

I certify that a copy of this document filed through the ECF system will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 31, 2018.

UNIBANK FOR SAVINGS,

        Plaintiff,

v.

999 PRIVATE JET, LLC, ELINA
SARGSYAN and EDGAR SARGSYAN,

        Defendants.

Civil Action No. 4:18-40134

## DECLARATION OF DANIEL MCDYRE IN SUPPORT OF SBK HOLDINGS USA, INC.'S MOTION TO INTERVENE

I, Daniel McDyre, declare:

1.     I am the Chief Executive Officer of SBK Holdings USA, Inc. ("SBK"). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to such facts under oath. I submit this Declaration in support of SBK's "Motion for Appointment of Chapter 11 Trustee."

2.     Beginning in October 2016, SBK's CFO, Levon Termendzhyan, asked me to investigate certain transactions and issues regarding SBK and its former President and lawyer, Edgar Sargsyan ("Sargsyan"). I started my investigation in October 2016, and my investigation continues to date.

3.     Having been involved with SBK since October 2016, and throughout the duration of the pending state court action filed by SBK in February 2017, *SBK Holdings USA, Inc. v. Edgar Sargsyan, an individual, et al.* (Case No. BC 649108) (the "State Court Action"), I am familiar with SBK's operations and activities, having reviewed all of SBK's book and records in its possession, including all financial statements and bank documents.

I am likewise familiar with Sargsyan's role, duties and obligations to SBK while he was President of and lawyer for SBK, and all monies transferred or otherwise provided by SBK to third parties, including to Sargsyan's law firm at the time, Pillar Law Group ("PLG"). I am informed and believe Henrik Mosesi was a lawyer and legal partner with Sargsyan at PLG. I am informed and believe PLG ceased operations after the California State Court Action was filed.

4.     Sargsyan was President of, and lawyer for, SBK from December 2013 (Sargsyan became licensed as an attorney in California on or about May 10, 2016) until July 2016, when he was terminated by SBK for embezzlement and breach of fiduciary duties, among other things.

5.     While Sargsyan was President of and lawyer for SBK, he was involved in numerous transactions on behalf of SBK, including the purchase of the 1997 Gulfstream G-IV SP, Serial No. 1315, FAA Registration No. N999SE [previously N580KF] (the subject Aircraft). The Aircraft was purchased entirely with SBK's money, and Sargsyan was legally representing SBK in his capacity as the President of the company with respect to that purchase. Although Sargsyan was instructed to register the Aircraft with the FAA as the property of SBK, Sargsyan instead fraudulently transferred ownership and registered the Aircraft in the name of another one of his companies, Regdalin Aviation, LLC ("Regdalin Aviation").

6.     SBK discovered the above conversion/improper transfer of the Aircraft in or about September 2016. In December 2016, I contacted the FAA by letter and requested a lien in the amount of $6,227,250 be placed on the Aircraft (which, at the time, had tail number N580KF). On or about December 30, 2016, the FAA Aircraft Registration Bureau filed the Aircraft Claim of Lien Letter.

7.     In May 2017, after the commencement of the State Court Action, Regdalin Aviation transferred ownership of the Aircraft to 999 Private Jet, LLC, the defendant in the above-captioned case. On or about the same time, after multiple attempts Regdalin

2

Aviation was successful in changing the registration and tail number of the Aircraft from N580KF to N999SE.

8. I am informed that Sargsyan obtained two loans using the Aircraft as security. First, on February 29, 2016, The Huntington National Bank provided a loan to Regdalin Aviation for approximately $4.9 million, which I am informed was purportedly secured by the Aircraft. SBK believes this loan was paid off through a subsequent refinance.

9. In or about May 2017, several months *after* the commencement of the California State Court Action, defendants Edgar Sargsyan and his wife Elina Sargsyan obtained a loan from UniBank for approximately $4.3 million. I believe that Edgar Sargsyan forged my signature on documents when attempting to refinance the Aircraft.

10. I understand that in connection with the Unibank loan, in or about May 2017, Sargsyan executed and delivered to UniBank a security agreement purporting to grant to UniBank a security interest in the subject Aircraft, and UniBank registered an alleged security interest in the Aircraft with the International Registry, Authorization Code IRN20170509153110.

11. At the very minimum, SBK believes that UniBank either did not conduct basic proper due diligence prior to the transaction with the borrowers, and or knew, or should have known, of litigation commenced by SBK which related to the Aircraft, among other red flags showing that the defendants were not the rightful owners of the Aircraft. SBK also believes that Sargsyan falsely stated that he had the original logbooks for the Aircraft, and made false statements in his loan application to UniBank, which SBK believes UniBank knew or should have known were false before making the loan purportedly secured by the Aircraft.

I declare under penalty of perjury under the laws of the State of California the

foregoing is true and correct.  Executed October 30, 2018, in Los Angeles, California.

_Daniel McIyre_
Daniel McIyre

4

| | |
|---|---|
| UNIBANK FOR SAVINGS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 4:18-40134 |
| ) | |
| ) | |
| 999 PRIVATE JET, LLC, ELINA ) | |
| SARGSYAN and EDGAR SARGSYAN, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF ARMEN MITILIAN IN SUPPORT OF SBK HOLDINGS USA, INC.'S MOTION TO INTERVENE

I, Armen G. Mitilian, declare:

1.     I am an attorney duly licensed to practice before all of the courts in the State of California.  I am an attorney with Mitilian Law Group, A Professional Law Corporation, counsel of record for SBK Holdings USA, Inc. ("SBK") in the state court action *SBK Holdings USA, Inc. v. Edgar Sargsyan, an individual, et. al.,* pending in the Los Angeles Superior Court (Case Number BC649108) ("State Court Action").  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to such facts under oath.  I submit this Declaration in support of SBK's Motion to Intervene.

2.     SBK is the Plaintiff and a Cross-Defendant in the State Court Action, which was filed on February 3, 2017, against 999 Private Jet LLC, Edgar Sargsyan, and Elina Sargsyan among other multiple other related defendants.

3.     In September 2017, SBK filed related lawsuits against entities owned by and related to Mr. Sargsyan seeking to quiet title as to several parcels of real property.  One of

the related cases is *SBK Holdings USA, Inc. v. Regdalin Properties LLC et. al.,* Los Angeles Superior Court Case Number BC677454 ("Quiet Title Action").

4.     The underlying claims in the State Court Action involve *in part* a dispute over the legal ownership of the 1997 Gulfstream aircraft, Model G IVSP, Serial Number 1315 with FAA Registration [Tail] Number N999SE [formerly number N580KF] ("Aircraft"). SBK alleges against Mr. Sargsyan, a California attorney, claims of fraud, embezzlement, and breach of fiduciary duties owed to SBK.   With respect to the Aircraft, SBK contends Mr. Sargsyan fraudulently acquired the Aircraft with funds embezzled from SBK by and through a client trust account managed by Mr. Sargsyan and his former law partners at the Pillar Law Group law firm. SBK alleges Mr. Sargsyan forged ownership documents causing the fraudulent registration of the Aircraft to his corporation, Regdalin Aviation LLC. In or about September 2016, SBK discovered Mr. Sargsyan's fraud and caused a lien to be recorded against the Aircraft with the Federal Aviation Administration. Thereafter, Mr. Sargsyan transferred ownership of the Aircraft from Regdalin Aviation LLC to 999 Private Jet, LLC.

5.     On August 24, 2018, I filed on behalf of SBK an Ex Parte Application for a Temporary Restraining Order and for an Order to Show Cause Regarding Issuance of a Preliminary Injunction asking the Court in the State Court Action to enjoin certain Defendants therein, including Mr. Sargsyan and 999 Private Jet LLC from selling, leasing, transferring, encumbering, wasting, using and/or disposing of the Aircraft. On that same date, Los Angeles Superior Court Judge Dennis J. Landin granting the requested injunctive relief, entered a Temporary Protective Order restraining and enjoining defendants from, among other things, using or transferring the Aircraft, and scheduled a further hearing for August 27, 2018. (A true and correct copy of the Order is attached hereto as Exhibit 1.)

6.     Between August 25, 2018, and August 27, 2018, I discovered the enjoined defendants violated the Temporary Protective Order and caused the Aircraft to be moved

from Van Nuys Airport in California to Teterboro Airport in New Jersey, and then to San Francisco Airport in violation of the Temporary Protective Order.

7. Consequently, on August 30, 2018, I filed a second Ex Parte Application for a Temporary Restraining Order, a Temporary Protective Order and for an Order to Show Cause Regarding Contempt for Mr. Sargsyan's, 999 Private Jet LLC's, and Regdalin Aviation LLC's violation of the Temporary Protective Order by using the Aircraft. The Application was granted on August 30, and Judge Landin entered a second Temporary Protective Order, preventing the use or transfer of the Aircraft, and setting a further hearing for September 7, 2018, to issue a Preliminary Injunction and to find Defendants in contempt for violating the initial Temporary Protective Order. (A true and correct copy of the Order is attached hereto as Exhibit 2.)

8. On September 6, 2018, Judge Landin, issued a Tentative Ruling in the State Court Action related to the September 7, 2018 hearing, granting SBK's Motion for a Preliminary Injunction. Judge Landin's Tentative Ruling provides that SBK made a sufficient showing of some possibility it will prevail on the merits of its conversion claim and that it suffered irreparable harm at least with respect to Mr. Sargsyan collecting the income from chartering the subject aircraft. (A true and correct copy of the Tentative Ruling is attached hereto as Exhibit 3.)

9. On September 7, 2010, UniBank For Savings ("UniBank") filed an Ex Parte Application for Leave to File Complaint in Intervention in the State Court Action. UniBank, however, failed to give notice to SBK of this pending action and its request for injunctive relief in this action, notwithstanding UniBank's knowledge of the existence of SBK's Aircraft Claim Of Lien Letter and its claim to ownership of the Aircraft. Notwithstanding Judge Landin's Tentative Ruling issuing the Preliminary Injunction (with only the amount of the undertaking to be determined), the Preliminary Injunction

///

was ultimately not issued and deemed moot due to this Court's September 7, 2018 Order for Injunction in favor of UniBank.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct. Executed October 30, 2018, in Los Angeles, California.

_____

Armen G. Mitilian

4



CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 24 2018

Sherri R. Carter, Executive Officer/Clerk
By: Daisy G. Vallin, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| SBK HOLDINGS USA, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>EDGAR SARGSYAN, an individual, et al.,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION | Case No. BC649108<br>[Related to Case No. BC677454]<br><br>[Hon. Michael J. Raphael, Dept. 51]<br><br>[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION<br><br>OR, IN THE ALTERNATIVE,<br><br>[PROPOSED] ORDER SHORTENING TIME ON MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION<br><br>[Filed concurrently with Ex Parte Application, Declarations of Armen G. Mitilian, Levon Termendzhyan, Daniel McDyre, and Nicolas Steele, Request for Judicial Notice]<br><br>Date:     August 24, 2018<br>Time:    8:30 a.m.<br>Department:  51<br><br>Action Filed:  February 3, 2017<br>Trial Date:  November 6, 2018 |

Plaintiff SBK Holdings USA, Inc.'s ("SBK") Ex Parte Application for: (1) a Temporary

Restraining Order to restrain Defendants 999 Private Jet LLC, Regdalin Aviation LLC and Edgar

Sargsyan and their respective employees, agents and persons acting with or behalf of them,

1

MITILIAN LAW GROUP, A PROFESSIONAL LAW CORPORATION
16633 VENTURA BOULEVARD, SUITE 1000
ENCINO, CALIFORNIA 91436
(818) 671-3877

1  individually or collectively (collectively, **"Defendants"**) from selling, leasing, transferring

2  encumbering, wasting, using and/or disposing of a 1997 Gulfstream IV-SP jet serial number 1315

3  and tail number N999SE (**"Aircraft"**), which is currently listed as "Available Immediately for

4  Lease"; (2) an Order to Show Cause requiring Defendants to show cause why a Preliminary

5  Injunction should not issue pending the conclusion of trial in this action enjoining Defendants

6  from selling, leasing, transferring encumbering, wasting, using and/or disposing of the Aircraft; or

7  in the alternative; (3) for an Order Shortening Time on a Motion for Issuance of a Preliminary

8  Injunction, came on for hearing on August 24, 2018, at 8:30 a.m., in Department 51 of the above-

9  entitled Court. Appearances were as noted on the record.

10      The Court, having considered the Application, the Opposition, the other papers and

11  evidence submitted, the arguments of counsel and the matters on which judicial notice may be

12  taken, and based thereon and good cause appearing therefor, grants the Application, and hereby

13  orders:

### PROTECTIVE
### TEMPORARY ~~RESTRAINING~~ ORDER

15      Defendants, including their respective employees, agents and persons acting with or behalf

16  of them are hereby restrained and enjoined from selling, leasing, transferring encumbering,

17  wasting, using and/or disposing of the Aircraft. until 5:00pm on August 27, 2018.
     EX PARTE CONTINUED TO AUGUST 27, 2018 at 9:00 AM.

### ORDER TO SHOW CAUSE

19      Defendants shall appear on _____, at _____ a.m./p.m. to show

20  cause why a Preliminary Injunction should not issue retraining and enjoining Defendants and their

21  respective employees, agents and persons acting with or behalf of them, from selling, leasing,

22  transferring encumbering, wasting, using and/or disposing of the Aircraft pending a trial on the

23  issues in the First Amended Complaint (or any subsequent operative pleading).

24      SBK shall serve Defendants with this Order by _____ and shall file a

25  Proof of Service by _____. SBK may file an Application for Preliminary

26  Injunction or a brief supplementing the Application by _____. Defendants'

27  Opposition to the Application for Preliminary Injunction or a brief supplementing the Application

28  shall be filed by _____. SBK's Reply to the Opposition shall be filed

by_____. All documents referenced herein shall be served by email or overnight delivery.

Or, in the Alternative,

The hearing on SBK's Application/Motion for Issuance of a Preliminary Injunction is on _____, at _____ a.m./p.m. in Department 51. SBK shall file and serve its Application/Motion for Issuance of a Preliminary Injunction and all supporting documents by no later than _____. Defendants shall file and serve any Opposition and supporting documents by no later than _____. SBK shall file and serve any Reply and supporting documents by no later than _____. All documents referenced herein shall be served by email or overnight delivery.

AUG 2 4 2018

Dated: _____

JUDGE OF THE SUPERIOR COURT

ᴸᵁᴵᴵᴵᴵᴵᴵᴵᴵ ᴵᴵᴵᴵᴵᴵᴵ

[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION

MITILIAN LAW GROUP, A PROFESSIONAL LAW CORPORATION
16633 VENTURA BOULEVARD, SUITE 1000
ENCINO, CALIFORNIA 91436
(818) 671-3877

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 3 0 2018

Sherri R. Carter, Executive Officer/Clerk
By: Daisy G. Vallin, Deputy

1
2
3
4
5
6
7
8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

9
10
11

SBK HOLDINGS USA, INC., a California
corporation,

Plaintiff,

vs.

EDGAR SARGSYAN, an individual, et al.,

Defendants.

AND RELATED CROSS-ACTIONS

Case No. BC649108
[Related to Case No. BC677454]

[Hon. Dennis J. Landin, Dept. 51]

[~~PROPOSED~~] TEMPORARY
RESTRAINING ORDER/TEMPORARY
PROTECTIVE ORDER;

[PROPOSED] ORDER TO SHOW CAUSE
REGARDING CONTEMPT FOR
VIOLATION OF PRIOR TEMPORARY
PROTECTIVE ORDER

Date:           August 30, 2018
Time:           8:30 a.m.
Department:     51

Action Filed:   February 3, 2017
Trial Date:     November 6, 2018

12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff SBK Holdings USA, Inc.'s ("**SBK**") Ex Parte Application for: (1) a Temporary

24 Restraining Order or a Temporary Protective Order to restrain Defendants 999 Private Jet LLC,

25 Regdalin Aviation LLC and Edgar Sargsyan ("**Sargsyan**") and their respective employees, agents

26 and persons acting with or behalf of them, individually or collectively ("**Defendants**") from

27 selling, leasing, transferring encumbering, wasting, using and/or disposing of a 1997 Gulfstream

28

[PROPOSED] TEMPORARY RESTRAINING ORDER/TEMPORARY PROTECTIVE ORDER; AND [PROPOSED]
ORDER TO SHOW CAUSE REGARDING CONTEMPT FOR VIOLATION OF TPO

MITILIAN LAW GROUP, A PROFESSIONAL LAW CORPORATION
16663 VENTURA BOULEVARD, SUITE 1000
ENCINO, CALIFORNIA 91436
(818) 671-3877

1  IV-SP jet serial number 1315 and tail number N999SE ("**Aircraft**"), which is currently listed as

2  "Available Immediately for Lease" until September 7, 2018; and (2) an Order to Show Cause

3  requiring Defendants to show cause why they should not be held in contempt for violating the

4  August 24 TPO [defined below in Paragraph 1], including payment of SBK's attorneys' fees and

5  costs incurred, payment of a fine of $1,000 to the court, and detention and imprisonment of

6  Sargsyan, all in accordance with Code of Civil Procedure section 1218 ("**Application**"), came on

7  for hearing on August 30, 2018, at 8:30 a.m., or as soon thereafter as the matter may be heard, in

8  Department 51 of the above-entitled Court.

9       The Court, having considered the Application, the Opposition, the other papers and

10  evidence submitted, the arguments of counsel, and based thereon and good cause appearing

11  therefor, grants the Application and hereby orders:

12       **TEMPORARY RETRAINING ORDER / TEMPORARY PROTECTIVE ORDER**

13       Defendants, including their respective employees, agents and persons acting with or on

14  behalf of them are hereby restrained and enjoined from selling, leasing, transferring, encumbering,

15  wasting, using and/or disposing of the Aircraft up through and including _Sept. 7, 2018_ at

16  _5:00_ a.m./p.m.

17

18       **ORDER TO SHOW CAUSE REGARDING CONTEMPT**

19       Defendants, and each of them, shall appear on _Sept 7, 2018_, at _9:00_ a.m./p.m.

20  in Department 51 of the above-entitled court to show cause why Defendants, and each of them,
    Sanctioned $1,500 per CCP 1775 for violating the previous

21  should not be ~~adjudged in contempt of court and punished accordingly for willfully disobeying~~ the

22  Temporary Protective Order issued by this Court on August 24, 2018 ("**August 24 TPO**").

23       The August 24 TPO, and Defendants' disobedience thereof, are more particularly

24  described in the Application, which is to be served concurrently with this Order. This Order shall

25  be served on Defendants personally by and through Sargsyan, and by delivering a copy to

26  Defendants' counsel of record at least _3_ days prior to the date of the hearing set forth herein.

27  Defendants shall have until _4_ a.m./p.m. on _September 5_, 2018, to file and

28

2

1    serve by email or overnight delivery to all counsel of record any and all papers responsive to this

2    Order to Show Cause.    π SBK TO SHARE 50% OF ANY HANGAR STORAGE
                              COSTS BASED ON THE VENDOR PROVIDING DOCUMENTS
3    Dated: __AUG 3 0 2018__       SHOWING THE HISTORICAL HANGAR COSTS FOR
                                   THE LAST 12 MONTHS.

4
                                    _____
5                                   JUDGE OF THE SUPERIOR COURT

6                                      DENNIS J. LANDIN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         3

MITILIAN LAW GROUP, A PROFESSIONAL LAW CORPORATION
16663 VENTURA BOULEVARD, SUITE 1000
ENCINO, CALIFORNIA 91436
(818) 671-3877

Accordingly, LASC Case No. BC916123 is related to this Case No. BC591642. CRC, rule 3.300. This order does not consolidate the cases. CRC, rule 3.350. Kief to give notice.

Dated:

                                        Dennis J. Landin
                                        Superior Court Judge

**Case Number: BC649108   Hearing Date: September 07, 2018   Dept: 51**

| SBK HOLDINGS USA, INC., | Case No.: BC649108 (r/t BC677454) |
|---|---|
| Plaintiff, | Hearing Date: 9/7/18 |
| v. | Trial Date: 11/6/18 (BC649108); 2/26/19 |
| EDGAR SAGSYAN, et al., | (BC677454) |
| Defendants. | **[TENTATIVE] RULING RE:** |
| | Motions for Preliminary Injunctions |

#### Background

In the main case (BC649108), plaintiff SBK Holdings USA, Inc. (SBK) sues defendants Edgar Sargsyan, Regdalin Aviation LLC, Regdalin Properties LLC, and Pillar Lar Group (PLG) for embezzlement, legal malpractice, and related claims. (The Court refers to Edgar Sargsyan by first name, as the complaint does, for clarity and consistency, not out of familiarity or disrespect.) The operative first amended complaint was filed on October 10, 2017. Edgar filed a cross-complaint against SBK, Daniel McDyre, and Levon Termendzhyan for wage and hour law violations, defamation, and related claims. The operative first amended cross-complaint was filed on May 4, 2017.

In the related case (BC677454), SBK sues Regdalin Properties LLC; Regdalin Holdings LLC; 11420 Oxnard St LLC; Manuk Aboyan; and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud upon plaintiff's title thereto to quiet title. The operative first amended complaint was filed on January 16, 2018 and asserts twelve causes of action to quiet title.

On August 24, 2018, in the main case, SBK, McDyre, and Termendzhyan filed an ex parte application for a temporary protective order (TPO) and for an order to show cause regarding issuance of a preliminary injunction regarding a Gulfstream jet. On that day, the Court granted the TPO and continued the ex parte to August 27. On August 27, the Court allowed the TPO to expire and set the ex parte as a noticed motion (the Gulfstream Jet Motion) for September 7.

On August 6, 2018, in the related case, SBK filed a motion for issuance of a preliminary injunction enjoining Tony Tcharbakshi, Suyapa B. Gonzalez, and Best Alliance Foreclosure and Lien Services, Corp. (collectively, the Magnolia Defendants) from conducting a foreclosure sale (the Foreclosure Sale Motion.) (The Magnolia Defendants were substituted in as Doe defendants on July 26 and August 1, 2018.)

Both motions are construed as motions for issuance of a preliminary injunction. The Court considered the moving, opposition, and reply papers and rules as follows.

#### Evidentiary Objections

SBK's evidentiary objections (raised in connection with the Foreclosure Sale Motion) are OVERRULED in their entirety as not relied upon or irrelevant to this ruling.

#### Motion for Preliminary Injunction Standard

As a threshold matter, preliminary injunctions may be granted only after the moving party shows there is no adequate remedy at law. *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 832-833. "The rule in this state is that injunctive and declaratory relief will not be granted where there is a plain, complete, speedy, and adequate remedy at law." *Rickley v. County of Los Angeles* (2004) 114 Cal.App.4th 1002, 1013 (internal quotations and citations omitted.)

A preliminary injunction's main purpose is to preserve the status quo pending trial. *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.

"The trial court's decision rests on the consideration of two interrelated factors: (1) the likelihood that [moving party] will prevail on the merits at trial and (2) the interim harm that [moving party] is likely to suffer if the injunction is denied, compared to the harm the [opposing party] is likely to suffer if the injunction issues." *Perez v. Hastings College of the Law* (1996) 45 Cal.App.4th 453, 456 (citing *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286.) These factors are applied on an inverse sliding scale: the greater the likelihood of success on the merits, the less that must be shown for interim harm, and vice versa. *Butt v. State of California* (1992) 4 Cal.4th 668, 678.

A trial court has broad discretionary powers to grant or deny a request for a preliminary injunction so long as it does not act capriciously. The court should exercise its judgment in favor of the party most likely to be injured. *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205. If the denial of an injunction would result in great harm to the plaintiff, and the defendant would suffer little harm if it were granted, then it is an abuse of discretion to fail to grant the preliminary injunction. *Ibid*.

Procedurally, "[a] preliminary injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor. No preliminary injunction shall be granted without notice to the opposing party." CCP § 527(a). Here, no formal judgment has been entered, so the motion is timely.

#### Gulfstream Jet Motion

*Likelihood of Prevailing on the Merits*

The elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages. Hartford Financial Corp. v. Burns (1979) 96 Cal.App.3d 591, 598.

Here, declarations filed by McDyre, Termedzhyan, and Nicholas Steele establish that there is at least "some possibility" that plaintiff will prevail on this cause of action. See Costa Mesa City Employees' Assn. v. City of Costa Mesa (2012) 209 Cal.App.4th 298, 309 ("Regardless of the balance of interim harm, the preliminary

injunction cannot be allowed to stand unless there is 'some possibility' [the moving party] will prevail on the merits of its action.") The declarations aver that, although Regdalin Aviation LLC (Regdalin Aviation) was registered as the owner at the time of purchase, Sargsyan had been instructed to list SBK as the registered owner. McDyre Decl. ¶ 5; Steele Decl. ¶ 5; Termedzhyan Decl. ¶ 4. Steele represents that Sargsyan lied to him about Termedzhyan wanting the jet to be registered in the name of Regdalin Aviation, purportedly a sister company to SBK. Steele Decl. ¶ 5. McDyre represents that Sargsyan forged his signature when attempting to subsequently refinance the jet. McDyre Decl. ¶ 8. Finally, Termedzhyan represents that even though the funds used to purchase the jet came from Pillar Law Group, Sargsyan's law firm, Termedzhyan initially authorized those funds to be transferred from SBK's accounts on representations that the jet would be purchased for SBK. Termedzhyan Decl. ¶ 5. These declarations are sufficient to establish a likelihood of prevailing on the merits.

### *Irreparable Harm*

Defendants argue in opposition that SBK, McDyre, and Termedzhyan fail to show irreparable harm because this is an action for money damages. This fact alone, however, is not fatal. See Mitsui Manufacturers Bank v. Texas Commerce Bank-Fort Worth (1984) 159 Cal.App.3d 1051, 1059 ("Respondent TCB contends that Simon has made no showing of irreparable injury, because only money is involved. That fact does not prevent the issuance of a preliminary injunction. [Citation.]") In Mitsui, the Court of Appeal held that the beneficiary of a letter of credit may be enjoined from drawing against it. Id. at 1057-1059. The situation here is analogous in the sense that SBK, McDyre, and Termedzhyan seek to enjoin defendants from acquiring funds (in the form of income from charter flights) to which they are arguably not entitled.

"In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation]." Family Record Plan, Inc. v. Mitchell (1959) 172 Cal.App.2d 235, 242; see also Robbins, supra, 38 Cal.3d at 205 (trial court "must exercise its discretion 'in favor of the party most likely to be injured.' [Citations.]") For the reasons stated above, the motion is GRANTED.

### Foreclosure Sale Motion

### *Likelihood of Prevailing on the Merits*

SBK establishes "some possibility" of prevailing on its second and fourth causes of action for quiet title on the Magnolia properties. As Termedzhyan represents, and as mentioned in the Court's ruling for defendants' motion to expunge lis pendens, filed June 6, 2018, Sargsyan and Regdalin Properties LLC obtained legal title to the Magnolia properties through fraud. See Termedzhyan Decl. ¶ 5 ("Specifically, I authorized Sargsyan to purchase the Properties in June 2016, with title to be held by SBK much like all the other real property purchased by SBK. . . . Sargsyan, however, put title in the name of Regdalin Properties without my knowledge and consent . . . .")

In opposition, the Magnolia Defendants cite King v. Meese (1987) 43 Cal.3d 1217 for the proposition that "[o]f the two factors, the likelihood that plaintiff will prevail against the defendants sought to be enjoined is the more important." See OPP (Foreclosure Sale) 9:13-14. King, however, makes no such statement. Rather, it states, as do the other authorities cited above, that "the more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue." Id. at 1227.

### *Irreparable Harm*

Although not cited by either SBK or the Magnolia Defendants, the Court finds Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust (1985) 168 Cal.App.3d 818 highly instructive on this step. There, the beneficiary of a number of trust deeds securing real property sought foreclosure, and the trustor sought a preliminary injunction enjoining the beneficiary from proceeding with foreclosure, which the trial court granted. Id. at 818-823. In affirming the grant of preliminary injunction, the Court of Appeal stated the following with regard to preliminary injunctions against foreclosure sales:

> As to the balance of hardships we have no trouble finding the court properly exercised its discretion when it concluded the plaintiff faces greater harm from denial of the injunction than defendant would from its issuance. Here, the defendant seeks to foreclose several hundred thousand dollars worth of trust deeds. Should the defendant prevail at trial the worst that it will have suffered will have been some delay in foreclosure. . . . Moreover defendant will be in a position at that time to recoup any late fees which the court determines were actually owed. The plaintiff, on the other hand, stands to lose all of its trust deeds as well as being chargeable with the foreclosure expenses . . . unless the foreclosure is restrained. His prayer for a permanent injunction against the foreclosure, if granted, would be useless since the trust deeds already would have been sold. Much of the other relief he seeks in the main action likewise would be rendered irrelevant. Given the drastic implications of a foreclosure, it is not surprising to find courts quite frequently granting preliminary injunctions to forestall this remedy while the court considers a case testing whether it is justified under the facts and law. [Citations.]

Id. at 824-825. Here, SBK similarly argues that should the foreclosure sale proceed, its second and fourth causes of action "will be essentially be rendered meaningless." MOT (Foreclosure Sale) 14:1-9. The risk that SBK will be foreclosed from establishing that the current owner of the Magnolia properties obtained title fraudulently here outweighs the Magnolia Defendants' claimed hardship of delay in receiving foreclosure sale proceeds.

The Magnolia Defendants suggest that they would not be bound by any judgment to the extent they are bona fide encumbrancers who obtained a lien on the Magnolia properties without actual or constructive notice of pending litigation. OPP (Foreclosure Sale) 11:11-20. This, however, neglects the fact that the Magnolia Defendants are named parties to this quiet title action. They would therefore be bound by a judgment here.

The motion is accordingly GRANTED.

### Undertaking

Code of Civil Procedure section 529, subdivision (a) provides (emphasis added): "On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction. Within five days after the service of the injunction, the person enjoined may object to the undertaking. If the court determines that the applicant's undertaking is insufficient and a sufficient undertaking is not filed within the time required by statute, the order granting the injunction must be dissolved."

In this regard, "the trial court's function is to estimate the harmful effect which the injunction is likely to have on the restrained party, and to set the undertaking at that sum. [Citations.]" Abba Rubber Co. v. Seaquist (1991) 235 Cal.App.3d 1, 14.

Neither party to the Gulfstream Jet Motion discusses the requirement or appropriate amount of undertaking. The parties should be prepared to discuss this issue at the hearing.

The Magnolia Defendants assert that the outstanding balance on their second deed of trust is $447,914.00. OPP (Foreclosure Sale) 4:8. (The Magnolia Defendants state that a slightly higher amount is owed under the section specifically addressing the undertaking, but because the amounts are inconsistent and because none of the Magnolia Defendants represent as to the outstanding amount, the Court will use the lower figure.) Because SBK does not dispute the appropriateness of this amount in reply, the Court intends to set the undertaking at $447,914.00.

Conclusion

The motions are GRANTED. The Court intends to sign the proposed order on the Foreclosure Sale Motion, and SBK is ORDERED to submit a proposed order on the Gulfstream Jet Motion. SBK to give notice.

Dated:

Dennis J. Landin
Superior Court Judge