UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNIBANK FOR SAVINGS, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) |
| v. | ) NO. 4:18-40134-TSH |
| | ) |
| 999 PRIVATE JET, LLC, ELINA SARGSYAN, & EDGAR SARGSYAN, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| SBK HOLDINGS USA, INC., | ) |
| | ) |
| Intervenor. | ) |

**ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Docket No. 29)**

**September 12, 2019**

**HILLMAN, D.J.**

Plaintiff Unibank for Savings filed this action for breach of, and enforcement of its rights under, a promissory note executed by 999 Private Jet, LLC, ("999 Private Jet"), Edgar Sargsyan ("Mr. Sargsyan"), and Elina Sargsyan. SBK Holdings USA, Inc. ("Intervenor"), moved to intervene. (Docket No. 19). The Court granted the motion, and Intervenor filed a Complaint alleging its ownership of collateral used to enforce Plaintiff's rights under the promissory note. (Docket No. 26, 27).

Plaintiff moves for summary judgment on Intervenor's claims. (Docket No. 29). Because Intervenor has failed to establish a genuine issue of material fact, Plaintiff's motion is ***granted***.

1

**Background**

This Court reviews the record in the light most favorable to the party opposing summary judgment. *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1st Cir. 2000).

From 2013 through July 2016, Mr. Sargsyan was President of, and legal counsel to, Intervenor. (Docket No. 27 at 2). In 2015, without Intervenor's knowledge or consent, Mr. Sargsyan formed Regdalin Aviation ("Regdalin"), of which he was the Managing Member. (Docket No. 27 at 2).

On November 5, 2015, Mr. Sargsyan purchased a Gulfstream aircraft, Model G IVSP, Serial No. 1315, FAA Registration No. N999SE (the "Aircraft") with Intervenor's funds and transferred ownership to Regdalin. (Docket No. 27 at 2–3). On February 29, 2016, Mr. Sargsyan refinanced the Aircraft with The Huntington National Bank ("Huntington"). (Docket No. 30 at 1). As part of that refinancing, Regdalin granted, and Huntington perfected, a security interest in the Aircraft. (Docket No. 1).

Intervenor discovered Mr. Sargsyan's fraud in September 2016. (Docket No. 27 at 3). Intervenor's current Chief Executive Officer, Daniel McDyre ("Mr. McDyre"), contacted the Federal Aviation Administration ("FAA") by letter to request a lien of $6,227,250 on the Aircraft. (Docket No. 33-1 at 2–3). The FAA filed this letter in the Aircraft's Suspense File on December 30, 2016. (Docket No. 33-1 at 2–3). Intervenor also filed a Complaint for Damages in the Los Angeles Superior Court on February 3, 2017. (Docket No. 27 at 3).

In early 2017, Regdalin sought to refinance the Huntington loan. (Docket No. 30 at 1). As part of the refinancing deal, Regdalin transferred ownership of the Aircraft to 999 Private Jet. (Docket No. 30 at 1–2). Representatives from Unibank allegedly contacted an unspecified employee at SBK in "in April 2017 or May 2017" to request the original logbooks for the

Aircraft.  (Docket No. 33-5 at 3).  Intervenor asserts that, during this call, it informed Plaintiff that 999 Private Jet lacked legitimate title to the Aircraft.  (Docket No. 33-1 at 4).

On May 4, 2017, to satisfy the balance due on the Huntington loan, Plaintiff loaned 999 Private Jet, Mr. Sargsyan, and Elina Sargsyan $4,348,334.01, secured by an interest in the Aircraft.  (Docket No. 30 at 2).  Plaintiff filed a Form 8050 with the FAA to perfect its interest.  (Docket No. 30 at 2).  At the time, the FAA record for the Aircraft included a forged letter from Intervenor disclaiming all liens on and claims to the Aircraft.  (Docket No. 33-1 at 4).

Beginning in June 2018, 999 Private Jet, Mr. Sargsyan, and Elina Sargsyan failed to make the required monthly loan payments to Plaintiff.  (Docket No. 30 at 2).  Plaintiff filed this action with the Court on August 7, 2018.  (Docket No. 1).  On September 7, 2018, the Court granted Plaintiff's motion for a preliminary injunction and authorized Plaintiff to take possession of the Aircraft.  (Docket No. 12).  Intervenor moved to intervene on October 31, 2018.  (Docket No. 19).  The Court granted Intervenor's motion on April 1, 2019.  (Docket No. 26).  Plaintiff moved for summary judgment on Intervenor's claims on May 9, 2019.  (Docket No. 29).

**Legal Standard**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party.  *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994).  A fact is "material" when it may affect the outcome of the suit.  *Id*.  When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

**Discussion**

*1. Validity of Security Interest*

State law governs ownership of personal property, including aircrafts. *See* 49 U.S.C. § 44108(c)(1). Under Massachusetts law, a party must have rights in property to grant a valid security interest against that property. *See* M.G.L. C. 106 § 9-203. Intervenor alleges that Plaintiff lacks a valid security interest in the Aircraft because 999 Private Jet, having obtained title to the Aircraft fraudulently, had no rights to give Plaintiff.

If 999 Private Jet obtained title to the Aircraft fraudulently, Intervenor would undoubtedly have a superior claim over 999 Private Jet. But it does not necessarily follow that 999 Private Jet lacked any right to grant a security interest to a third-party purchaser or that, Plaintiff having granted such an interest, Intervenor would have a superior claim over that third-party purchaser. Intervenor does not dispute, for example, that Huntington had a valid superior security interest in the Aircraft, even though Huntington received that interest from Regdalin, which Intervenor similarly alleges obtained title to the Aircraft through fraud. (Docket Nos. 30 at 1, 33-1 at 2). Given this inconsistency, as well as Intervenor's failure to cite any law suggesting that a third-party cannot hold a valid security interest in property when the title owner obtained that property fraudulently, the Court rejects the argument that Plaintiff is not entitled to summary judgment because Plaintiff lacks a valid security interest in the Aircraft.

*2. Actual Notice*

Under Article 9 of the Uniform Commercial Code, a perfected security interest has priority over a conflicting unperfected security interest. *See* M.G.L. c. 106 § 9-322(2). Federal law supplies the rules for determining the perfection of a security interest in an aircraft. Section 44108 of Title 49 of the U.S. Code provides that, until a party records a security interest with the

FAA, the interest "is only valid against (1) the person making the conveyance, lease, or instrument; (2) that person's heirs and devisees; and (3) a person having actual notice of the conveyance, lease, or instrument."

Intervenor argues that it recorded its interest with the FAA. But Intervenor fails to offer any evidence to this effect. The record only suggests that Intervenor mailed a letter to the FAA requesting a lien on the Aircraft and that the FAA filed this letter in the Suspense File for the Aircraft. (Docket No. 33-1 at 2–3). The act of filing a letter in a Suspense File, however, is not the equivalent of recording an interest. In the absence of any indication that Intervenor perfected its interest in the Aircraft, Intervenor's recording argument fails.

Intervenor also contends that Plaintiff had actual notice of Intervenor's interest in the Aircraft.[1] According to Intervenor, Plaintiff contacted Intervenor in April or May 2017 to request the original logbooks for the Aircraft, at which point Intervenor informed Plaintiff that 999 Private Jet did not have legitimate title to the Aircraft. (Docket No. 33-1 at 4). But Intervenor has not offered any evidence to support this assertion. The only reference Intervenor makes to the phone call occurs in the declaration of Levon Termendzhyan ("Mr. Termendzhyan") proffered by Intervenor.[2] But Mr. Termendzhyan does not suggest that he had personal knowledge of the call. Instead, Mr. Termendzhyan generally states that representatives

---

[1] To the extent Intervenor argues that Plaintiff had constructive notice, such allegations are irrelevant to the § 44108 analysis because § 44108 requires actual notice.

[2] The Court also notes that the declaration of Mr. Termendzhyan presents a significant hearsay issue, and it is not clear the Court should consider it in resolving the motion for summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). But as consideration of the declaration does not alter the Court's decision, the Court assumes *arguendo* that it may do so.

from Huntington and Plaintiff "contacted SBK in February 2016, and in April 2017 or May 2017, asking if SBK had the original logbooks because [Mr. Sargsyan] did not have the original logbooks." (Docket No. 33-5 at 2). Intervenor has not introduced any phone records documenting the call, nor has it identified which employee received the call and when. Intervenor, in short, has not provided any evidence to substantiate its contention that this call took place.

Moreover, even if the Court assumed for the sake of this motion that the call happened, Intervenor has not shown that the call demonstrated actual notice of Intervenor's interest. Mr. Termendzhyan does not mention anything about the recipient informing Plaintiff of Intervenor's claim to the Aircraft. (Docket No. 33-5). And given the existence of other rational reasons for Intervenor to have possession of the original logbooks, we decline to assume that the mere fact that the call was placed implies knowledge. Mr. Sargsyan, after all, used to serve as President of and legal counsel to Intervenor. (Docket No. 27 at 2).

Because Intervenor has failed to establish a genuine dispute of material fact as to actual notice, a reasonable jury could not reach a verdict in Intervenor's favor. The Court therefore **_grants_** Plaintiff's motion for summary judgment.

*3. Equitable Subrogation*

Plaintiff argues that it is entitled to summary judgment as the senior lienholder under equitable subrogation. "Subrogation is the substitution of one person in place of another, whether as a creditor, or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *Provident Co-op. Bank v. James Talcott, Inc.*, 358 Mass. 180, 188 (1970) (internal quotation marks omitted). To apply equitable subrogation, the Court "must determine: (1) the

subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." *E. Bos. Sav. Bank v. Ogan*, 428 Mass. 327, 330 (1998) (internal quotation marks omitted).

Given the absence of any evidence suggesting Plaintiff knew of Intervenor's interest in the Aircraft, the Court finds Plaintiff's equitable subrogation argument persuasive.  First, Plaintiff paid the entire balance of the Huntington loan—and did so for its own interest and not as a volunteer.  Second, Huntington indisputably held a superior claim to the Aircraft over Intervenor.  (Docket Nos. 30 at 1, 33-1 at 2).  Because any rights Intervenor had to the Aircraft were already subject to Huntington's lien, it would not work any injustice to allow Plaintiff to succeed to that lien.

## Conclusion

For the reasons stated above, Plaintiff's motion (Docket No. 29) is ***granted***.  Accordingly, Intervenor's claims do not survive this motion.

**SO ORDERED**

> */s/ Timothy S. Hillman*
> **TIMOTHY S. HILLMAN**
> **DISTRICT JUDGE**